**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>    *Plaintiff*,<br><br>    v.<br><br>ERIC D. COX<br>*Defendant*. | No. 3:23-cr-00053 (VAB) |

**RULING AND ORDER ON JOINT MOTION**

The joint motion for written ruling, ECF No. 119 ("Joint Motion for Written Ruling"), is

**GRANTED** to the extent that the Court issues this written ruling memorializing its oral denial of

Eric Cox's ("Defendant") motion to dismiss Count One of the Indictment, ECF No. 57 ("Motion

to Dismiss"). On November 17, 2025, the Court denied the motion to dismiss orally. *See* Minute

Entry, ECF No. 90. This Ruling and Order further explains the basis for this decision.

For the following reasons, the motion to dismiss Count One of the Indictment, ECF No.

57, is **DENIED**.

**I.      BACKGROUND**

Mr. Cox moved to dismiss Count One of the Indictment based on the destruction or

failure to preserve certain evidence, including the firearm charged in the Indictment, shell

casings, DNA swabs, and the Audi and Hyundai involved in the underlying incident. ECF No.

57-1 ("Memorandum in Support").

1

## II.    DISCUSSION

To obtain dismissal based on lost or destroyed evidence, a defendant must show that the evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed," that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means," and, where the evidence was merely potentially useful, that the Government acted in bad faith. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (holding that the failure to preserve "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police"); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"); *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016) (explaining that "[a] criminal defendant moving for dismissal on the basis of spoliation of the evidence must make a two-pronged showing that the evidence possessed exculpatory value 'that was apparent before [it] was destroyed' and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means,' " and that failure to preserve evidence that is merely " 'potentially useful' " "does not violate due process 'unless a criminal defendant can show bad faith' "); *United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989) (noting that, "[t]o succeed on a claim that missing evidence would play a significant role in his defense and was thus 'material', a defendant must meet the two-pronged materiality standard established in *California v. Trombetta* . . . as well as show that the government acted in bad faith").

Mr. Cox argues that the failure to preserve the firearm, shell casings, DNA swabs, and the Audi and Hyundai, all of which he contends impaired his "ability to mount a defense" and

2

"adequately cross examine witnesses," and that the "exculpatory value of this evidence cannot be questioned and should have been recognized prior to its destruction." Mem. in Supp. at 6. He further argues that "there exists no good or bad faith analysis when a Court is assessing a Due Process violation for the Government failing to turn over exculpatory evidence." *Id*. at 7.

In response, the Government argues that dismissal is not warranted because Mr. Cox cannot satisfy any of the governing requirements. Gov't Opp'n at 7-15. The Government argues that the firearm, shell casings, and DNA swabs were inculpatory rather than exculpatory, that Mr. Cox's theory as to the Audi and Hyundai is speculative, that comparable evidence remained available through cross-examination and photographs, and that the record does not support any finding of bad faith. *Id*. at 8-15.

The Court agrees.

The threshold issue is one of "constitutional materiality . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. Under this standard, Eric Cox has not shown that dismissal of Count One is warranted.

First, there is nothing in Mr. Cox's motion or this record to support the notion that any of the destroyed or unpreserved evidence had apparent exculpatory value. While Mr. Cox argues that the evidence was exculpatory and that its value "cannot be questioned," Mem. in Supp. at 6, his motion largely identifies only the possibility of additional testing. As to the firearm and shell casings, he argues that the destroyed shell casings could not be compared to the shell casing found in the Audi "so as to determine if they had similar firing pin markings and extraction striations." *Id*. at 5. But, as the Government notes, "the lab compared the .40 caliber casings and

3

determined that they all were fired in the same firearm," and Mr. Cox has not shown that the firearm or shell casings were exculpatory rather than inculpatory. Gov't Opp'n at 8-9. Indeed, the Government represents that "the firearm and shell casings are critical pieces of inculpatory evidence." *Id*. at 9.

The same is true of the DNA swabs. Mr. Cox argues that, because the swabs were "consumed in testing," they are "now unavailable to determine the validity of the collection of the samples, to verify the validity of the testing processes, and to confirm that the results of the DNA testing were accurate." Mem. in Supp. at 5. But that argument does not establish that the swabs themselves were exculpatory (or even, arguably exculpatory) before they were consumed. As the Government explains, the state lab found "a strong DNA association between the defendant and the swabs," making them "extremely inculpatory evidence of the charged crime." Gov't Opp'n at 9.

As to the Audi and Hyundai, Mr. Cox argues that the vehicles should have been forensically tested to establish the "flight path and trajectory of the projectiles," which he claims would have been exculpatory. Mem. in Supp. at 5. But that theory is speculative. Even if further testing could have identified a second shooter, this "evidence would not be exculpatory because Cox is charged with felon in possession of a firearm, not the shooting or assault that occurred during the incident." Gov't Opp'n at 10; *see Trombetta*, 467 U.S. at 488 (holding that evidence must "be expected to play a significant role in the suspect's defense"); *Greenberg*, 835 F.3d at 303 (requiring a showing that "the evidence possessed exculpatory value that was apparent before it was destroyed").

Second, Mr. Cox has not shown that comparable evidence was unavailable through other reasonably available means. Although he argues that the evidence was "so unique that it makes it

4

impossible for the defense to obtain other comparable evidence," Mem. in Supp. at 6-7, the Government identifies multiple alternatives. As to the firearm and shell casings, defense counsel could cross-examine "the officers who collected and processed the evidence, the lab analysts who studied the evidence, and the witnesses present during the incident," and could also use "the photographs of the firearm and shell casings." Gov't Opp'n at 10. As to the DNA swabs, defense counsel could cross-examine "the officer who processed the gun for DNA and the lab expert who conducted the DNA analysis." *Id.* As to the Audi and Hyundai, defense counsel could cross-examine the firearms and ballistics expert and call the witnesses present during the incident. *Id.*

On this record, Mr. Cox thus has not shown that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489; *see United States v. Barnes*, 411 F. App'x 365, 369 (2d Cir. 2011) (noting that the defendant "could have challenged the DNA expert's results by way of cross-examination").

Third, Mr. Cox also has not made the necessary showing as to bad faith. While Mr. Cox argues that bad faith can be "imputed to the destruction of the evidence due to the actions of HPD and the Government bringing an indictment knowing that five important pieces of evidence had been destroyed fourteen months prior," Mem. in Supp. at 7, the record does not support that conclusion, because the circumstances surrounding the destruction and release of the evidence, as discussed below, reflect administrative decisions and standard procedures rather than any purposeful effort to deprive Eric Cox of exculpatory material.

As to the firearm and shell casings, the record reflects an administrative destruction ordered in Eric Little's state case, not a purposeful effort to deprive Eric Cox of exculpatory evidence. Gov't Opp'n at 13 (explaining that the Connecticut Superior Court ordered the

5

destruction in Eric Little's state case and that "[t]his was merely an administrative oversight that resulted in the destruction of evidence."). The same is true of the DNA swabs and the vehicles, because the record reflects routine forensic and evidence-handling procedures rather than bad faith. Gov't Opp'n at 13-14 (explaining that the swabs were consumed during analysis under the lab's standard procedures and that, at the time of testing, "there were no arrests in the case, and therefore, the lab did not send out any 'consumption letters' to the suspects."); *id*. at 14 (explaining that Hartford Police "processed the cars, and returned them to their rightful owners when it determined that they were 'no longer needed for evidence,'" and that there was "no bad faith because the Hartford PD has an interest in clearing out storage space at the police station.").

Prior administrative decisions of this kind have not constituted bad faith. *See Youngblood*, 488 U.S. at 57-58 (declining to impose on police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance" and holding that a defendant must show bad faith); *see also United States v. Hunley*, 476 F. App'x 897, 899 (2d Cir. 2012) (finding no bad faith where bureaucratic destruction of a firearm was not "in any way willful or malicious" and explaining that "bureaucratic error alone is not a sufficient basis to infer bad faith"); *United States v. Tyree*, 279 F. App'x 31, 33 (2d Cir. 2008) (finding no bad faith where evidence was destroyed because of a "gap in the bureaucratic network"); *Hernandez v. Burge*, 137 F. App'x 411, 414 (2d Cir. 2005) (finding no bad faith where the defendant failed to show that destruction of evidence was "purposeful"). As a result, on this record, Eric Cox has not established bad faith.

Finally, the U.S. Supreme Court's decisions in *Brady v. Maryland* and *United States v. Agurs* do not suggest a different result. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). And the Supreme Court explained in *Agurs* that the "rule of *Brady v. Maryland* . . . arguably applies in three quite different situations," and that the situation "illustrated by the *Brady* case itself, is characterized by a pretrial request for specific evidence." 427 U.S. 97, 103-04 (1976). *Agurs* further emphasized that there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case," and that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id*. at 109-10. But neither decision addresses or undercuts subsequent Supreme Court precedent addressing the precise issue here, such as *Youngblood* and *Trombetta*.

Accordingly, consistent with its prior oral denial of Mr. Cox's motion to dismiss Count One of the Indictment, ECF No. 57, will be denied.

## III.  CONCLUSION

For the foregoing reasons, the motion to dismiss Count One of the Indictment, ECF No. 57, is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 2nd day of April, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

7